D. GILL SPERLEIN (SBN: 172887)
gill@sperleinlaw.com
LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

*Attorneys for Eva Knott*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EVA KNOTT, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF SAN DIEGO; POLICE CHIEF DAVID NISLEIT, in his representative capacity as Chief of Police; and LIEUTENANT ADAM SHARKI, in his representative capacity as SDPD Public Information Officer, <br><br> Defendants. | Case No.: **'24 CV 0855 BAS DDL** <br><br> **DECLARATION OF D. GILL SPERLEIN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

I, D. Gill Sperlein, declare:

1.     I am a member in good standing of the California State Bar, the bar of this court, and various other federal courts including the Ninth Circuit and the United States Supreme Court. I am counsel of record for Plaintiff in this action. The statements I make in this declaration are based on my own first-hand knowledge unless indicated otherwise.

2.     Prior to this action, I represented Plaintiff, a journalist who writes under the pen name Eva Knott, with regard to another matter in which a criminal defendant moved to have the Plaintiff barred from the Courtroom because she filed papers with the Court using her pseudonym. The case was *California v. Lightfoot*, San Diego Superior Court, SCD27447.

3.     I filed an opposition to the motion on behalf of Plaintiff and the Court in that matter denied the criminal defendant's motion, finding that he had no standing to challenge the Court's decision to allow Plaintiff to report from the courtroom. The court also found that Plaintiff's use of a pseudonym was not "injurious to the court" and it would not "impede the conduct of the proceedings."

4.     While representing Plaintiff's interests in the Lightfoot action, the question arose as to whether SDPD had threatened to revoke, attempted to, or actually revoked Plaintiff's SDPD Media Identification card—often referred to as a press pass. Lightfoot alleged in his papers that "her media pass under the name 'Eva Knott' was revoked by SDPD in October of 2022."

5.     Plaintiff had exchanged some emails with someone alleging to be a representative of SDPD, but the email was unsigned. Plaintiff was suspicious, especially because her reporting was critical of Antifa and she knew its members had a reputation for hacking and doxing people. At the time, both Plaintiff and I were perplexed about how the Antifa Defendant would have known about the email.

6.      Whether or not SDPD considered Plaintiff's press pass to be revoked at that time, Plaintiff's existing pass was due to expire on April 1, 2024. Therefore, on September 21, 2023, on Plaintiff's behalf, I emailed Police Chief Nislet through SDPD's Media Department a cover letter and Plaintiff's application for the renewal of her press pass. **EXHIBIT A**. The cover letter explained the facts above and requested that SDPD issue the new press pass with her pseudonym.

7.      On October 2, 2023, I sent an email to SDPD's Media Department reminding them that we were waiting for a response and asking when a decision would be made. SPDP Public Information Officer Lieutenant Adam T. Sharkie responded by email on October 5, 2023 informing me that my letter had been received and the application was under review.  **EXHIBIT B**.

8.      I followed up again on October 29, 2023. **EXHIBIT C**.

9.      Finally on November 9, 2023, Lt. Sharkie emailed the department's decision on the application stating,

> Your appeal has been reviewed and is respectfully declined. You will not be issued an SDPD Media Credential at this time.
>
> Under SDPD Department Procedure 1.31, SDPD media credentials are issued to those individuals who "demonstrate a need to cross police and/or fire lines on a regular basis." The SDPD Media Credential is intended to quickly identify members of the media who frequently need to cross police lines at active scenes as referenced in 409.5, 409.6, and 409.7 of the California Penal Code.

> Your application does not demonstrate this need, and
> therefore, you have not met the required qualifications
> to be issued an SDPD Media Credential.
> You are welcome to submit a new application
> demonstrating the required qualifications set forth in
> SDPD Department Procedure 1.31.

I have attached a true and complete copy of that email communication as **EXHIBIT D.**

10. I responded to Lt. Sharkie on November 16, 2023. I questioned his language stating that our appeal had been denied, since in my view and understanding we had not filed an appeal. I asked that he inform me if I was wrong on the procedural posture of the application and that otherwise SDPD treat my letter as an appeal. In the letter I identified our basis for appeal. I also requested information about SDPD's basis for the denial and asked if there were any other written procedures. I never received a response.  I have attached a true and complete copy of that email communication as **EXHIBIT E.**

11. That same day I made a public records request to the City of San Diego asking for the following among other things:

   a. All applications for SDPD media identification cards submitted to the SDPD between January 1, 2018 and November 16, 2023.

   b. All written procedures for processing SDPD media identification cards that have been in effect between January 1, 2018 and November 16, 2023.

   c. All SFPD internal communications discussing any aspect of media identification cards between January 1, 2018 and November 16, 2023.

12. SDPD produced tranches of responsive documents on 12/6/23, 2/2/24, 2/15/24, 3/12/24, 3/28/24, and 4/15/24. On April 15, 2024 San Diego notified me that

the production was complete. The only policy San Diego produced was SDPD Policy 1.31. I have attached a full and complete copy of that document as **EXHIBIT F**. Nothing that I saw in the documents suggested that SDPD had ever denied an application for lack of a demonstration to cross police or fire lines on a regular basis other than the denial at issue in this matter. In fact, it did appear that SDPD rarely if ever denies an application for a press pass.

13.    The documents produced by SDPD included among other documents, an August 12, 2022 email from USA Today National Correspondent, Extremism & Emerging Issues Will Carless stating that sources told him Eva Knott is a pseudonym and inquiring if reporters are required to show identification when applying for press passes and if it would violate any laws or internal rules to use a pseudonym/fake name when applying for a press pass. The production also included a January 6, 2023 follow-up email. A full and complete copy of the produced emails is attached hereto as **EXHIBIT G**.

14.    The documents also included several communications between Plaintiff and SDPD relating to the revocation of her press pass in the fall of 2022 including an e-mail stating:

> It has come to our attention that you have been issued a San Diego Police Department Press Pass under the name,████████████We have done some research and it appears that ████████████ is your legal name. The San Diego Police Department's Media Services Unit would like to inform you that your media press pass (#1161M) under the name████████████" has been revoked.
>
> Now, if you have legally changed your name to ████████, please show documentation so that your press pass under the name████████████is not revoked. We have also notified your employer, San Diego Reader, of the findings.

Please mail your press pass to the San Diego Police
Department at 1401 Broadway, San Diego, Ca 92101,
Attn: Media Services Unit or you can come by in person
to turn the press pass in. You will need to start the
process over under the name ███████████. If you have
any questions at all or feel as though we made an
error, please email us back.

The e-mail string included Plaintiff's response:

It is disappointing that SDPD has been persuaded by
Antifa to revoke my press credential.

As the media people at SDPD already know, I was always
clear about my use of a pen name, and why (I received
a letter to my married name at my home address from a
murderer in prison, for one thing. And gangstas have
threatened me and my photographer husband in the
courthouse. And there have been other threats.)

Use of a pen name is not new, Benjamin Franklin used
the name Silence Dogood to first get published, and
some experts believe William Shakespeare was the pen
name of Sir Francis Bacon. Mark Twain might be the
most famous American pen name. There is nothing
sinister about a pen name.

Since I have gone to SDPD headquarters every two years
and gotten photographed and fingerprinted, for ten
years now, I respectfully ask SDPD to reconsider their
position on this matter.

A copy of the email produced by SDPD is attached as **<u>EXHIBIT H</u>**.

15.    The production also included an October 4, 2022 email from the SDPD
Media Department to Plaintiff stating:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

We do have an formal appeals process. If you would
like to appeal the decision, please turn in you press
pass to the San Diego Police Department's Media
Services Unit and we can explain to you in detail
about the process. The appeals process will not start
unless the press pass under the name ███████████
has been turned in. If you do not turn in the press
pass, we will consider this a lack of cooperation of
your part and this could hinder you from getting a
press pass under your legal name. Thank you for your
cooperation.

A copy of that email is attached as **EXHIBIT I**.

16.     On may 8, 2024 I visited the City of San Diego's publicly accessible website and downloaded each of the following documents at the urls indicated.

**EXHIBIT J** - SDPD Policy 1.30

https://www.sandiego.gov/sites/default/files/130.pdf

**EXHIBIT K** - SDPD Policy 8.09

https://www.sandiego.gov/sites/default/files/809.pdf

**EXHIBIT L** - SDPD Media Card Application for individual working for single organization.

https://www.sandiego.gov/sites/default/files/media_credential_application_revised_august_14.pdf

**EXHIBIT M** - SDPD Media Card Application for individual working for multiple organizations. (Freelance)

https://www.sandiego.gov/sites/default/files/independent_application.pdf

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed on May 13, 2024 at Cazadero, CA

_____

D. Gill Sperlein

CASE NO. _____
DECLARATION OF D. GILL SPERLEIN

# EXHIBIT A

d. gill sperlein
the law office of d. gill sperlein

September 21, 2023

Police Chief Dave Nisleit[1]
Media Services Office
San Diego Police Department
1401 Broadway
San Diego, CA  92101

**VIA E-Mail Only MediaID@pd.sandiego.gov**

> Re:   *Renewal of Media Identification Card Application*
> ▬▬▬▬▬▬▬▬ *aka Eva Knott*

Dear Chief Nisleit:

I have the distinct privilege of representing ▬▬▬▬▬▬▬, a freelance reporter who writes for the *San Diego Read*er and the *Post Millennial*. Mrs. ▬▬▬ has held a SDPD-issued Media Pass for over more than years.

When she first applied, the pass was issued in her married name—▬▬▬▬▬▬.[2] In 2009 or 2010, after she received a handwritten letter sent to her home address from a convicted felon whose trial she had reported on, she began writing under the *nom de plume* Eva Knott. She made this change as a safety measure because she regularly reported on crime and the courts and other criminal defendants had attempted to intimidate. (See attached Declaration for more detail.) When she renewed her Media Pass, she asked that it be issued in the name of Eva Knott and SDPD granted her request. She has renewed the Media Pass every two years, each time SDPD photographed and fingerprinted her.

This year, a defendant in a multi-defendant criminal moved to exclude Mrs. ▬▬▬ from covering the case based on the fact that she requested media access using her pen name. Not surprisingly, the Court rejected the request. However, in the moving papers, the defendant's lawyer accused Mrs. ▬▬▬ of acting fraudulently. This allegation is false. Mrs. ▬▬▬ has always been open with SDPD about using a pen name. Given the purpose of the Media Pass and the reason Mrs. ▬▬▬ uses a pen name, it's clear she is not acting nefariously. Moreover, SDPD has a record of her name and her fingerprints.

Attached you will find Mrs. ▬▬▬▬'s application to renew her Media Pass. She again requests that it be issued in the name of Eva Knott. I am also attaching a copy of Mrs. ▬▬▬▬'s Declaration that I recently filed in court, which provides additional detail as to why Mrs. ▬▬▬ uses an alias, and it is signed under penalty of perjury.

---

[1] (or the Chief's Designee)
[2] Mrs. ▬▬▬ is now widowed.

███ Media Identification Card
September 21, 2023
Page 2 of 2

Upon approval, Mrs. ███ will of course come to SDPD Headquarters to complete the credentialing process.

Please feel free to contact me if you have any questions or concerns.

Very truly yours,

_____
D. GILL SPERLEIN

cc:   ███  ███

encl:   SDPD Media Identification Card Renewal Application

Declaration of Eva Knott in Support of Media Non-Parties' Opposition to Brian Lightfoot Jr.'s Motion to Deny Eva Knott's Requests to Photograph or Record Proceedings, Destroy Any Recordings and Eva Knott's Motion to Proceed Pseudonymously

# SAN DIEGO POLICE DEPARTMENT
## Media Identification Card Application
### (Independent)
For applicants who work for more than one news organization as a freelancer.

No. _____

Exp. _____

(FOR OFFICE USE ONLY)

New _____ Renewal __X__

press pass # 1161 M

Name __Knott_____ Eva_____ (pen name)
(LAST)                    (FIRST)         (MIDDLE INITIAL)

= married name on driver's license

Home Address _____, Carlsbad    92010
(STREET ADDRESS)                    (CITY)      (ZIP CODE)

Date of Birth ____ 1958        Email Address: evaknott1065@gmail.com

Home Phone _____        Business Phone 619-235-3000

**ASSIGNMENT AFFILIATIONS (LIST MOST FREQUENT EMPLOYER FIRST)**

NAME editor    FREQ./MO. CONTACT              PHONE
1. Jim Holman, San Diego READER      619-235-3000
2. _____
3. Libby Emmons, The Post Millennial   646-257-
4. _____  0260

GENERAL JOB DESCRIPTION Crime + Courts Reporter

I understand that possession of a San Diego Police Department Media Identification Card is a privilege granted by the Chief of Police to those who cover spot news on a regular basis. The Chief of Police reserves the right to deny or revoke a card, according to the guidelines established in San Diego Police Department Procedure 1.31.

common name

Eva Knott (pen name)
(Applicant's Signature)

RETURN APPLICATION TO: Please send the application in PDF form with your name in the subject of the email to: MediaID@pd.sandiego.gov. **If you do not complete the credentialing process within 30 days of approval of this application, you will be required to reapply for the credential.**

Approved: _____
(MEDIA SERVICES PROGRAM MANAGER)

Revised 01/21

# EXHIBIT B

## FW: Media Identification Card Application ████████████

**Sharki, Adam <ASharki@pd.sandiego.gov>**

Thu 10/5/2023 2:16 PM

To:Gill Sperlein <gill@sperleinlaw.com>

Good afternoon sir. Your letter has been received and this application is under review.

**Adam T. Sharki**
Lieutenant
Public Information Officer
San Diego Police Department

T: 619-531-2675
www.sandiego.gov/police

---

**From:** Gill Sperlein <gill@sperleinlaw.com>
**Sent:** Monday, October 2, 2023 12:53 PM
**To:** SDPD MediaID <MediaID@pd.sandiego.gov>
**Cc:** Eva Knott <evaknott1065@gmail.com>
**Subject:** [EXTERNAL] Re: Media Identification Card Application ████████████

Hello - It has been over ten days since I sent the email and attachments below and we have yet to receive a response. Can you please provide confirmation that the request is being processed and provide an approximate date when we might hear from you.

Thank you.

Gill Sperlein

_____

D. Gill Sperlein



345 grove street
san francisco, ca 94102
p 415.404.6615   f 415.404.6616
gill@sperleinlaw.com

**Confidentiality Notice:** This electronic transmission (and any documents accompanying it) may contain confidential information belonging to the Sender and protected by the attorney-client privilege and/or the Work Product Doctrine. This transmission is intended only for the use of the individual or entity named above. Disclosure, copying, distributing, or taking any action in reliance on the contents of this transmittal by anyone other than the intended recipient is strictly prohibited. If you have received this transmission in error, please contact the Sender immediately to arrange for its return.

**Tax Advice Disclosure:** To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

**From:** Gill Sperlein
**Sent:** Thursday, September 21, 2023 10:25 AM
**To:** MediaID@pd.sandiego.gov <MediaID@pd.sandiego.gov>
**Cc:** Eva Knott <evaknott1065@gmail.com>
**Subject:** Media Identification Card Application ██████████████

September 21, 2023

Police Chief Dave Nisleit
Media Services Office
San Diego Police Department
1401 Broadway
San Diego, CA  92101

**VIA E-Mail Only MediaID@pd.sandiego.gov**

>    **Re:**    ***Renewal of Media Identification Card Application***
>            ██████████████ ***aka Eva Knott***

Dear Chief Nisleit:

Please see the letter attached in .pdf.

Gill Sperlein

_____
D. Gill Sperlein



345 grove street
san francisco, ca 94102
p 415.404.6615   f 415.404.6616
gill@sperleinlaw.com

**Confidentiality Notice:** This electronic transmission (and any documents accompanying it) may contain confidential information belonging to the Sender and protected by the attorney-client privilege and/or the Work Product Doctrine. This transmission is intended only for the use of the individual or entity named above. Disclosure, copying, distributing, or taking any action in reliance on the contents of this transmittal by anyone other than the intended recipient is strictly prohibited. If you have received this transmission in error, please contact the Sender immediately to arrange for its return.

**Tax Advice Disclosure:** To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

<u>EXHIBIT C</u>

**d. gill sperlein**
the law office of d. gill sperlein

October 29, 2023

Adam T. Sharki
Lieutenant
Public Information Officer
San Diego Police Department

**VIA E-Mail Only** ASharki@pd.sandiego.gov

                    *Re:*      ***Renewal of Media Identification Card Application***
                                          ██████████████████ *aka Eva Knott*

Dear Lieutenant Sharki:

I write once again on behalf of ██████████████, a freelance reporter who writes for the *San Diego Reade*r and the *Post Millennial*. On behalf of Mrs. ████████, I submitted a Renewal of Media Identification Card Application on September 21, 2023. After an email inquiry from me on October 2, 2023, you responded on October 5th that the application was under review.

According to San Diego Police Department Procedure 1.31 VII (C) decisions on Applications must be made within 10 days. It has now been 38 days and we still have not been informed of a decision.

Please immediately process the application and inform us of the result.

Very truly yours,

D. GILL SPERLEIN

cc:     ██████████████████ aka Eva Knott

# EXHIBIT D

**RE: Renewal of Media Identification Card Application ████████████ aka Eva Knott**

Sharki, Adam <ASharki@pd.sandiego.gov>

Thu 11/9/2023 12:32 PM

To:Gill Sperlein <gill@sperleinlaw.com>

Your appeal has been reviewed and is respectfully declined. You will not be issued an SDPD Media Credential at this time.

Under SDPD Department Procedure 1.31, SDPD media credentials are issued to those individuals who "demonstrate a need to cross police and/or fire lines on a regular basis." The SDPD Media Credential is intended to quickly identify members of the media who frequently need to cross police lines at active scenes as referenced in 409.5, 409.6, and 409.7 of the California Penal Code.

Your application does not demonstrate this need, and therefore, you have not met the required qualifications to be issued an SDPD Media Credential.

You are welcome to submit a new application demonstrating the required qualifications set forth in SDPD Department Procedure 1.31.

**Adam T. Sharki**
Lieutenant
Public Information Officer
San Diego Police Department

T: 619-531-2675
www.sandiego.gov/police

<u>EXHIBIT E</u>

November 16, 2023

Lieutenant Adam T. Sharki
Public Information Officer
San Diego Police Department

**VIA E-Mail Only** ASharki@pd.sandiego.gov

> **Re:** **_Renewal of Media Identification Card Application_**
> ████████████ _aka Eva Knott_
> **_Appeal_**

Dear Lieutenant Sharki:

I received your November 9, 2023 email concerning my client's request to renew her media card.

In that e-mail, you wrote, "[y]our appeal has been reviewed and is respectfully declined." However, as far as I know there had been no earlier notification that the Department declined the media card application. Accordingly, the denial you informed me of was not the denial of an appeal, but the denial of an application. If I am mistaken, please let me know. Otherwise, please treat this letter as our appeal.

According to your email, SDPD's denial of the application is because my client failed to "demonstrate a need to cross police and/or fire lines on a regular basis" as required by San Diego Police Department Procedure 1.31(V) (B). We appeal the department's decision based on the following:

1. My client has submitted the same information, on substantially the same application every two years for the last 10. Her circumstances have not changed. Each time she submitted an application, SDPD approved it and issued a Media card.

2. SDPD media cards are a form of permit regulating the First Amendment protected activity of news gathering and is a prior restraint. To meet First Amendment requirements such a permitting scheme must have specific objective criteria for evaluating applications. The criteria upon which the Police Chief may deny a Media identification card as set forth at §§ (D) 1-6 are for the most part objective. The qualifications set for at §§ V (A) 1 &2, and § V (C) are also objective. Unsurprisingly, the qualification for which the SFPD denied my client's application—an applicant must "demonstrate a need to cross police and/or fire lines on a regular basis"—is not. SFPD's denial of my client's application based on this provision violates the First Amendment.

We respectfully request that the SDPD reconsider its denial of Mrs. ██████ application for a media card. If the Department refuses to issue a media card, we ask that you provide the following information.

Relevant to our first basis for appeal:

- What circumstances have changed since the Department previously issued media cards to Mrs. ██████?

Relevant to our second basis for appeal:

- How does an applicant "demonstrate a need to cross police and/or fire lines on a regular basis?"
- How does the department define "regular basis?"
- Are there any written procedures to support your answers to the two immediately preceding bullet point questions?

Please respond within ten days as required by San Diego Police Department Procedure 1.31(VII) (C).


Very truly yours,


_____
D. GILL SPERLEIN



cc:     ██████████ aka Eva Knott

## EXHIBIT F

**SAN DIEGO POLICE DEPARTMENT**
**PROCEDURE**

**DATE:**                          NOVEMBER 8, 2019

**NUMBER:**                    1.31 – ADMINISTRATION

**SUBJECT:**                    MEDIA IDENTIFICATION CARDS

**RELATED POLICY:**       1.31

**ORIGINATING DIVISION:**   MEDIA SERVICES

**NEW PROCEDURE:**        ☐
**PROCEDURAL CHANGE:**    ◼ Minor Changes
**SUPERSEDES:**              DP 1.31 – 01/20/2017

---

I.    **PURPOSE**

This Department procedure establishes guidelines for the issuance and associated privileges of media identification cards.

II.   **SCOPE**

This procedure applies to all members of the Department.

III.  **DEFINITIONS**

NEW

A.    Applicant - news media representative or freelancer requesting a San Diego Police Department Media Identification Card and Blue Parking Placard

NEW

B.    Freelancer – any person who works independently to gather news in the form of audio or video recordings for later sale to any news media as defined above.

C.    News – the oral, written, photographic, digital, or other type of recording of events that attract public attention.

D.    News media – any individual or organization that disseminates news to the public or to others for dissemination to the public.

E.    News media representative – any person who, for compensation, is employed or hired on a full-time basis by news media for the purpose of gathering, analyzing, or reporting news.

F.      Vehicle Identification Placard – A blue colored placard (5 ½" x 12 ½") issued to news media representatives and freelancers who have applied for, been approved, and received a media identification card from the San Diego Police Department.

## IV.      PROCEDURES

A.      The application for a media identification card shall be submitted directly by the applicant.  A media identification card application may be obtained from the Police Department's Media Relations Office, or on the Police Department's web page in the forms and permits tab.

> NEW

B.      The application shall contain:

1.      The applicant's full name, residence address, home phone number, date of birth, and social security number;

2.      The name and business address of the news organization that the applicant represents;

3.      The applicant's job title, date of hire, and business phone number;

4.      The signature of the applicant and the signature of the owner, managing editor, or other supervisor of newsgathering activities for the news organization; and,

5.      In addition to containing information described above, the application for an independent or freelancer will include the applicant's business phone number and the phone numbers of individuals/agencies to whom the applicant regularly sells his or her work.

> NEW

C.      Media identification cards will be issued for a period of two years, or until the card is revoked by the Chief of Police, or the relationship of the approved applicant to the news organization ends.  The applicant will notify the San Diego Police Department their employment ended with their corresponding news media organization and reapply for a new Media Identification Card and Vehicle Identification Placard with their new news media organization or as an independent/freelancer.

> NEW

D.      Possession of a San Diego Police Department Media Pass and accompanying Vehicle Identification Placard is a privilege.  The Chief of Police may deny a Media identification card and corresponding Vehicle Identification Placard to any person for any of the following reasons:

1.      Felony conviction within the past ten years;

NEW

2.  Misdemeanor conviction within the past five years involving violence to include, but not limited to, domestic violence, battery on peace officer or other emergency personnel, and delaying/resisting/obstructing a peace officer;

3.  Any outstanding warrant (application will be considered once the warrant is cleared);

4.  Restrained party in any protective order (Criminal Protective Order, Domestic Violence Restraining Order, or any Temporary Restraining Order);

5.  Any documented behavior that would indicate a threat to the safety of officers or lab personnel at a scene; or

6.  A history of repeated arrests for either felonies or misdemeanors.

E.  Applicants denied a Media Identification card and corresponding Vehicle Identification Placard may appeal the decision subject to the provisions in Section VII of this procedure.

F.  Members of the Media in possession of a San Diego Police Department (SDPD) Press/Media pass shall conduct themselves with the same level of professionalism expected of all Department Members.

1.  Documented behavior that would bring the Department or pass holder into disrepute may be grounds for denial or revocation of a media pass. As members of the media, they shall be expected to conduct themselves in accordance with the Society of Professional Journalist's (SPJ) Code of Ethics located at https://www.spj.org/pdf/spj-code-of-ethics.pdf.

G.  Completed applications should be mailed to:  Media Services Office, San Diego Police Department, MS 705, 1401 Broadway, San Diego, CA 92101.  Completed applications may be emailed to MediaID@pd.sandiego.gov, or hand delivered to Police Headquarters.

H.  All applications submitted to the Media Services Unit will be processed, and the applicant will be notified of its approval or denial.  Applicants approved for a Media Pass and parking placard must come to SDPD Headquarters at 1401 Broadway, San Diego, and present a government issued, photo ID to complete the credentialing process.  The applicant's photograph and signature will be transferred to the applicant's Media Identification Card by computer.

1.  The entire process will take approximately 10 minutes.  There is no cost to the applicant.

<div style="border:1px solid red;display:inline-block;padding:2px 8px;color:red">NEW</div>

I.    If the applicant does not complete the credentialing process within 30 days of approval of the application, the applicant will be required to reapply.

J.    Applications are generally processed on Thursday, except when a holiday falls on a Thursday, the application will be processed the next business day.

## V.    <u>QUALIFICATIONS</u>

A.    The applicant must represent a news agency which:

    1.    Maintains regular news service in the City or County of San Diego; and,

    2.    Has been published or broadcast at regular intervals of at least once a month for the preceding six months, prior to the filing of the application for a press identification card.

B.    The applicant must demonstrate a need to cross police and/or fire lines on a regular basis.

C.    The applicant must be at least 18 years of age.

## VI.    <u>FORMAT</u>

A.    Media identification cards, to be valid, must bear the following information:

    1.    Name and photograph of holder;

    2.    Name of organization represented;

    3.    A distinct number assigned by the Media Services Unit at the time of application;

    4.    Signature of the Chief of Police; and,

    5.    Date of expiration.

B.    The media identification card is computer-generated and includes the signature of the applicant.  The card is created in Human Resources after the Media Services Unit has approved the application.

C.    When members of the media present valid media identification cards and have in their possession a blue Vehicle Identification Placard, they should be permitted to drive through police and/or fire lines (not into crime scenes) provided that public safety and order will not be jeopardized and that investigations by police or fire departments will not be hampered.

D.   The Media Services Office will issue vehicle identification placards.

   1.   Blue placards (5 1/2" x 12 1/2") are issued to television stations, radio stations, newspapers and journalists; they permit parking in yellow zones, white zones, time zones, and parking meters while engaged in the course of their duties.

   2.   Permission to access and/or park at a scene will be granted, provided that public safety and order will not be jeopardized and police and/or fire investigations will not be hampered.

E.   Members of this Department should cooperate fully with all members of the news media as outlined in Department Procedure 1.30, Press Release and Media Relations.

F.   Members of the media from other cities and counties, who possess valid media identification cards issued by law enforcement agencies, should be accorded the same treatment and consideration given members of the local media.

## VII.   REVOCATION AND APPEAL

A.   A media identification card may be revoked if the holder refuses to obey an order given by a peace officer at an incident under control by the Police Department or Fire-Rescue Department, and thereby jeopardizes public safety and order or interferes with an investigation.

<u>NEW</u>

B.   A Media Identification card and Vehicle Identification Placard may also be revoked if their status changes and they would be subject to a denial as described in Article VI, Section D.

C.   Notice of the revocation or denial of a media identification card will be sent within ten business days of that decision to the business address on record for the holder. The notice will contain a statement of the reasons for the revocation or denial. An appeal of a revocation or a denial of a media identification card may be filed by submitting a written request for an appeal with the Chief of Police, or his or her designee, within ten business days from the date of the notice. The request for appeal must set forth the reasons for the appeal. A written decision regarding the appeal will be sent within ten business days of the receipt of the request for appeal.

# EXHIBIT G

**From:** ████████
**To:** SDPD MediaInquiry
**Subject:** [EXTERNAL] Re: Enquiry about SDPD press pass used/court docs filed by San Diego Reader reporter
**Date:** Friday, January 6, 2023 12:42:58 PM

Good afternoon.

I never received a response to this email. What is the SDPD's response, please?

████████

National Correspondent, Extremism & Emerging Issues
USA Today
████████████████████
████████

---

**From:** ████████████@usatoday.com>
**Date:** Friday, August 12, 2022 at 3:42 PM
**To:** ████████████████████████
**Subject:** Enquiry about SDPD press pass used/court docs filed by San Diego Reader reporter

To Whom It May Concern:

My name is ████less, I am a national correspondent for USA TODAY.

I am reporting out a story about the pending criminal prosecution of 11 members of Antifa by the SD DA. In doing so, I have come across a bit of a strange situation that I am trying to get to the bottom of. This will probably make it into my story, but I'm also just plain interested.

During my reporting, a couple of sources came to me to enquire about the identity of a journalist who writes for the San Diego reader under the name ████████ This byline has appeared in several stories about the case I am working on, including a high-profile story that was co-authored with Andy Ngo: https://thepostmillennial.com/secret-grand-jury-in-san-diego-indicts-alleged-antifa-members-accused-of-brutal-assaults.

My check of public records reveals no record for an ████████ in San Diego County. Another source of mine informed me that ████████ is actually a pseudonym that has been used by a writer at the San Diego Reader for more than 10 years. This was confirmed by the publisher of The Reader, who wrote me an email stating that ████████ is, indeed, a pseudonym.

On Monday, I was at a court hearing for the Antifa case and saw ████████t" there. She was wearing an SDPD press pass with that name on it. She had also filed paperwork with the court asking to take photos and record audio in the court (attached).

I confronted ████████ after the court hearing. She insisted that this is her real name. It is not.

Can I therefore ask three main questions:

1. When applying for a press pass (in the case of SDPD) or filling out a form in the courthouse, is a reporter required to show identification?
2. Do you know whether ███████ provided identification when applying for her press pass/filling out forms in the courthouse?
3. Would applying for a press pass/filling out a form in a pseudonym/fake name violate any laws or any of your internal rules?

Thank you for your help with this matter,

███████

███████
National Correspondent, Extremism & Emerging Issues
USA Today
████████████████
███████

EXHIBIT H

**To:** SDPD MediaInquiry ████████████████████
police@carlsbadca.gov
**Cc:** mlickona@sdreader.com; PDWebMail@oceansideca.org;
ecpd@cityofelcajon.us
**Subject:** [EXTERNAL] Re: ████████ media credential revocation

It is disappointing that SDPD has been persuaded by Antifa to revoke my press credential.
As the media people at SDPD already know, I was always clear about my use of a pen name, and why (I received a letter to my married name at my home address from a murderer in prison, for one thing. And gangstas have threatened me and my photographer husband in the courthouse. And there have been other threats.)
Use of a pen name is not new, Benjamin Franklin used the name Silence Dogood to first get published, and some experts believe William Shakespeare was the pen name of Sir Francis Bacon. Mark Twain might be the most famous American pen name. There is nothing sinister about a pen name.
Since I have gone to SDPD headquarters every two years and gotten photographed and fingerprinted, for ten years now, I respectfully ask SDPD to reconsider their position on this matter.
Thank you for your kind consideration,


████████

Verified by San Diego Police, issued Press Pass # 1161
Regular contributor to **The San Diego READER**
**on Twitter as** ████████████


On Tue, Oct 4, 2022 at 10:46 AM SDPD MediaInquiry
████████████████████████████ wrote:

> Good Morning ████████████████,
>
> It has come to our attention that you have been issued a San Diego Police Department Press Pass under the name, ██████ ██████ We have done some research and it appears that ████████████████ is your legal name. The San Diego Police Department's Media Services Unit would like to inform you that your media press pass (#1161M) under the name ██████ ██████" has been revoked.
>
> Now, if you have legally changed your name to ████████", please show documentation so that your press pass under the

name ██████ is not revoked.  We have also notified your employer, San Diego Reader,  of the findings.

Please mail your press pass to the San Diego Police Department at 1401 Broadway, San Diego, Ca 92101, Attn: Media Services Unit or you can come by in person to turn the press pass in.  You will need to start the process over under the name ████████.  If you have any questions at all or feel as though we made an error, please email us back. Thank you for your time and attention to this matter.

# EXHIBIT I

On Tue, Oct 4, 2022 at 1:07 PM SDPD MediaInquiry
███████████████████ wrote:

We do have an formal appeals process.  If you would like to
appeal the decision, please turn in you press pass to the San
Diego Police Department's Media Services Unit and we can
explain to you in detail about the process.  The appeals process
will not start unless the press pass under the name ████████
has been turned in.  If you do not turn in the press pass, we will
consider this a lack of cooperation of your part and this could
hinder you from getting a press pass under your legal name.
Thank you for your cooperation.

EXHIBIT J

## SAN DIEGO POLICE DEPARTMENT
## PROCEDURE

**DATE:**                                JUNE 13, 2018

**NUMBER:**                          1.30 - ADMINISTRATION

**SUBJECT:**                          PRESS RELEASE AND MEDIA RELATIONS

**RELATED POLICY:**              1.30

**ORIGINATING DIVISION:**      MEDIA SERVICES

**NEW PROCEDURE:**               ☐
**PROCEDURAL CHANGE:**        ■ EXTENSIVE CHANGES
**SUPERSEDES:**                     DP 1.30 – 08/01/2012

---

**I.      PURPOSE**

This Department procedure establishes guidelines for the disclosure and reporting of information relating to arrested persons and criminal trials in order to protect the Constitutional right of a person to a fair trial.  This procedure also establishes guidelines for the dissemination of information advising the public of criminal activity or seeking the public's assistance to locate wanted or missing persons, or to solve crimes.


**II.     SCOPE**

This procedure applies to all members of the Department.


**III.    DEFINITION**

Authorized News Media representatives - those persons possessing valid media credentials issued by any bona fide law enforcement agency, or other suitable identification establishing regular news media affiliation or employment (identification from the agency for whom the individual works, such as CNN).

IV.    **PROCEDURES FOR THE MEDIA SERVICES OFFICE**

A.    The Department's Media Services Office has specific responsibility for dissemination of information and provides a Department-wide, limited resource for the various commands.  However, each division and area station is responsible for establishing appropriate news media relations within that command.

B.    Department personnel shall advise the Media Services Office of media requests for assistance in preparing feature stories, "in-depth" articles, or series which require significant Department time and effort.  The Media Services Office will review the request for its overall public information value to the Department and to the public and will recommend whether Department personnel should assist in the media request.

C.    Any member of the Department who prepares a news release must route the release through the Media Services Office before disseminating the release to the media.  A Public Information Officer (PIO) will review the release to ensure that it conforms to Department guidelines for style and content.

EXCEPTION:  The Homicide Unit has sole responsibility for conducting all media interviews at homicide or officer-involved shooting scenes and all follow-up interviews relative to those cases.  The Homicide Unit will prepare and disseminate its own news releases relative to those cases.

V.    **PROCEDURES FOR RELEASING INFORMATION**

A.    All members of the Department are encouraged to cooperate fully with authorized news media in providing information to the public about the affairs of this Department in which the public has a legitimate interest.

B.    In situations permitting, the ranking Department member most acquainted with the facts of a crime should be designated to respond to media inquiries and to conduct any media briefings.  When this is not practical, the unit supervisor or division captain should respond to media questions and conduct any press briefings after subordinates acquainted with the situation have briefed him/her.

C.    Restricted Release of Certain Information

Statements of Department policy, official positions of the Department, official responses to criticism of the Department, comments critical of another department, agency, institution, or public official, or statements pertaining to pending or ongoing litigation involving the Department shall be made only by the Chief of Police or an individual designated by the Chief of Police.

1.      Command personnel may release verbatim excerpts from the Department's policies and procedures or verbatim excerpts from written policies of their particular command, and may quote statutory law that affects the Department.

2.      Command personnel may respond to criticism of their particular command or of the activities of members of their command, except when the criticism has resulted in an Internal Affairs investigation or other litigation.

3.      Only the Chief of Police or his/her designee shall release any information regarding an internal investigation of alleged misconduct by members of the Department, or disciplinary action taken as a result of any such investigation.

    a.      Pursuant to 832.7 PC, the names of Department members subject to disciplinary action as a result of an ongoing or completed internal investigation and other details of the investigation may not be released.

    b.      Where previous publicity has resulted from the allegation, limited information, including the findings of an internal investigation, may be released without identifying specific Department members.

4.      The Media Services Office may release information regarding the employment history of Department members.  Such information shall be limited to age, length of service, and current assignment.  Guidelines for release of personnel information are contained in 832.7 PC.

D.   Watch Commander's Office

1.      It is the responsibility of the Watch Commander's Office to disseminate information and available news releases to authorized news media regarding all major incidents, significant crimes, or other newsworthy events.

2.      The Watch Commander shall diligently seek out relevant information from field units, and all members of the Department shall communicate such information to the Watch Commander as soon as practicable.

3.      The Watch Commander shall disseminate news releases prepared by other divisions in the Department.

4.      The Watch Commander may call upon the Media Services Office for assistance.

5.      The ranking member of any investigations team at a crime scene may release appropriate factual information directly to authorized news media.

6.      The ranking member has the direct responsibility to provide timely information to the Watch Commander or to any Public Information Officer assigned to the incident so that a news release can be prepared.

7.      Investigative unit supervisors are directly responsible for the dissemination of follow-up information regarding matters under investigation by their units.

8.      No other member of the Department shall release information pertaining to cases, which are under investigation by detectives.

      a.      Previously disseminated news releases by the Department may be reiterated by any Department member.

      b.      Investigative unit supervisors may call upon the Media Services Office for assistance to meet the requirements of a particular investigation.

9.      Each Watch Commander on his/her respective shift is further responsible for identifying and disseminating news releases and other items, which might be of particular interest and importance to the public.

10.      Pertinent information and news releases will be emailed to Communications Division, area commands, and Traffic Division.

11.      During regular business hours, the Media Services Office will have the task of disseminating copies of Department news releases to the media as they become available.

E.      Area captains and investigative lieutenants are directly responsible for the release of appropriate Department information to the public within their assigned operational areas.

1.      They shall respond to media inquiries about matters of public interest and establish a media liaison.

2.      This responsibility may be delegated on a day-to-day basis to a specific subordinate, but commanding officers remain accountable and may call upon the Media Services Office for assistance.

## VI.   **INFORMATION WHICH MAY NOT BE RELEASED**

A.   Do not release the following information regarding criminal suspects or arrested persons:

   1.   Statements or opinions of a suspect's character, criminal record, or reputation, except to aid in apprehension of a suspect;

   2.   The existence or content of any admission or confession;

   3.   Any refusal by a suspect to make a statement;

   4.   The performance or result of any examination or test;

   5.   The identity, testimony, or credibility of any prospective witness;

   6.   Any statement on the possibility of a guilty plea or other charges being filed;

   7.   Any statement or opinion of the guilt or innocence of a suspect;

   8.   The names or identities of any juveniles arrested or listed as suspects in a crime report; and,

   9.   The name of an individual who is being evaluated for 5150 W&I or is being transported to a mental facility (W&I 5328).

B.   Any information from child abuse reports (Section 11167.5 PC).

C.   Photographs or criminal histories ("rap sheet" information).

   1.   Officers shall not deliberately pose a person in custody for photographing or televising by representatives of the news media.

   2.   Un-posed photographing and televising of a defendant in public places is not inappropriate.  Officers should not interfere with such photographing or televising unless such photographing or televising would obstruct officers' official duties.  In addition, it is legal for any citizen or member of the media to photograph or videotape officers, witnesses, victims or others while they are in public.

   3.   No copies of "rap sheets" or any information obtained from "rap sheets" may be released (Section 11142 and 13303 PC).

D.   The names of deceased persons until the decedent's next of kin have been notified by the Medical Examiner.

E.      Information that would tend to hamper an investigation or disclose a confidential source.

F.      Residential addresses of Department members.

G.      Department members shall use discretion in providing information to the news media with a request to "hold back" or not to publish information; the news media are under no legal obligation to honor such requests.  Department personnel are accountable for any "off the record" statements to the media.

H.      Per California Vehicle Code §20012, the identity of drivers involved in vehicular collisions is protected from release, except to parties to the collision or those who have a material interest in the collision, such as parents or guardians of juveniles involved in collisions or insurance carriers of the involved parties.

I.      The Commanding Officer of Traffic Division, or his/her designee, will be responsible for all news releases involving fatal collisions.


VII.    **INFORMATION WHICH MAY BE RELEASED**

Most Department information which is not confidential or which would not hamper an investigation or jeopardize the rights of anyone can and should be released to the news media.  Information that may be released within the law and this procedure can be described as:

A.      Information that is a matter of public record, and any of the following information pertaining to an adult arrested suspect (Section 6254(f)(1) GC):

        1.      Name.

        2.      Age.

        3.      Residence.

        4.      Employment or occupation.

        5.      Charges to be sought.

        6.      Physical description.

        7.      Date and time of arrest.

        8.      Location of arrest.

        9.      Factual circumstances.

        10.     Time and manner of release, or location where arrestee is being held.

B.      Any information necessary to obtain public assistance in the apprehension of a criminal suspect.

C.      Any information warning the public of danger or of the nature and frequency of crime in the community.

D.      Any information that might result in public assistance of any investigation.

E.      Any description of the general scope of an investigation.

F.      Circumstances surrounding an incident or arrest such as:

   1.      Place of occurrence.

   2.      Time and date.

   3.      Description of resistance encountered or pursuit involved.

   4.      Any possession or use of weapons involved.

   5.      General description of any items seized.

   6.      Names of Department members involved, except undercover officers.

   7.      The duration of any investigation and identification of any other law enforcement agencies involved.

G.      Crime Victim Information

Any California Government Code Section 6254(f) mandates that local law enforcement agencies make public the following information:

   1.      Time and date of report.

   2.      Time, date, and location of the crime.

   3.      Name age, and current address of victim.

      EXCEPTION - Government Code Section 6254(f) prohibits the disclosure of names and addresses of victims of specified sex, trafficking, stalking, and hate crimes if the victim (or parent or guardian if the victim is a minor) has requested confidentiality.  These are Penal Code Sections 220, 236.1, 261, 261.5, 262, 264, 264.1, 265, 266, 266a, 266b, 266c, 266e, 266f, 266j, 267, 269, 273a, 273d, 273.5, 285, 286, 288, 288a, 288.2, 288.3, 288.5, 288.7, 289, 422.6, 422.7, 422.75, 646.9, and 647.6.  This prohibition is also in effect where multiple crimes have occurred and one or more of these specified crimes is alleged.

      Also, under Sections 293 and 293.5 PC, Department members are prohibited from releasing the name of a victim of these specified sex crimes, if the victim has requested confidentiality.  This information can be obtained from the ARJIS-2 Crime Report Form.

4.      The factual circumstances of the crime.

5.      General description of injuries, property, and weapons involved.

H.      Mug shots or file photographs of adults arrested or wanted for serious crimes may be released under the following conditions:

1.      To aid in the capture or to warn the public of dangerous wanted persons.

2.      The investigative unit responsible for the case has determined that the photo release will not interfere with the investigation, and the appropriate investigative lieutenant or higher-ranking authority authorizes the release.


## VIII.   ACCESS TO DEPARTMENT REPORTS BY NEWS MEDIA

A.      Requests for crime or arrest reports by members of the media should be made online via www.sandiego.nextrequest.com.

It should be noted that information provided to the media over and above that which is required by law may result in a voluntary waiver of its otherwise exempt status.  Such information must then be made available to any member of the public who demands access or review.  A report may not be "selectively" disclosed to one member of the public and withheld from others (Section 6254.5 Government Code).

B.      Juveniles

The California Supreme Court, in the case of TNG vs. Superior Court, 4 Cal. 3d 767 (1971), ruled that the Juvenile Court has the exclusive authority to determine the extent to which juvenile records and identification may be released to third parties.  The TNG case does not prohibit law enforcement agencies from releasing information to news media about the facts and nature of crimes committed by juveniles.  It merely prohibits the agency from identifying juveniles under the age of eighteen years who have been arrested, detained, or made a ward of the court, without first obtaining the written consent of the Juvenile Court.  Matters involving juveniles that do not amount to an arrest or detention do not come within the TNG decision and there would be no restriction on disclosure to the news media.

## IX.   NEWS MEDIA AT DISASTER AREAS AND CRIME SCENES

Refer to Department Procedure 8.09, Media Relations at Critical Incidents, for news media procedures at disaster areas and crime scenes.

## X.   CALLOUT PROCEDURE FOR THE PUBLIC INFORMATION OFFICERS

The criteria for callout procedures are contained in Department Procedure 8.09, Media Relations at Critical Incidents.

NEW

## XI.   SOCIAL MEDIA GUIDELINES

The San Diego Police Department currently uses several primary forms of social media that include Facebook, Twitter, Nextdoor.com, Nixle, and Instagram. These platforms allow the Department to provide meaningful and timely information to our public on a variety of topics including community events, notification of crime issues, news stories and major incidents occurring in the City. The Media Services Unit serves as the Department's administrator for these social media sites.

The Department has one primary Facebook page with separate individual pages for Recruiting, STAR/PAL, and Crime Stoppers. The Department has one primary Twitter account. The Chief of Police maintains a separate Twitter account and is the sole administrator for this account.

The Department also has multiple Nextdoor.com accounts in the names of individual Department users. All requests for San Diego Police Department Nextdoor.com accounts shall be arranged through the Media Services Unit.

Department Media Services personnel will be responsible for maintaining, adding and responding to information on the Department's primary social media accounts. Only personnel who have received social media training through Media Services and who have been authorized by the Chief of Police may post content on Department social media accounts. This does not preclude Department members from reviewing or responding to information posted on the Department's social media pages from their own personal accounts. Individuals authorized to post content on Department social media accounts administered by Media Services shall adhere to the following guidelines:

A.   Use is for official police business only.

B.   Nothing of a personal nature or personal opinion shall be posted.

C.   No law enforcement sensitive information shall be posted.

D.   No criminal record information shall be posted.

E.      Photographs of minors shall be removed at the request of the depicted minor's legal guardian or a Department supervisor.

F.      Photographs of individuals shall be removed at the request of the depicted individual.

G.      Refer to the City of San Diego social media standards located on the Employee Intranet for additional guidelines.

As technology advances and additional social media sites/mechanisms become available, these standards may be amended to add or delete approved social media services as deemed appropriate.

Any questions or concerns regarding content posted to any Department social media account should be directed to the Media Services Unit.

NEW

## XII.   MEMBER INTERACTION ON SOCIAL MEDIA SITES

Members interacting on social networking sites shall adhere to conduct that does not reflect negatively on the Department or the City and are reminded that posting of insensitive, biased-based or derogatory comments may have adverse consequences, such as being used as exculpatory evidence in the impeachment of witness testimony in court proceedings, negative impact on future employment, public and/or private embarrassment, and may affect the efficient operations of the Department. No member shall knowingly post official photographs, video images, audio files or text documents that belong to the Department without the expressed written permission of the Chief of Police.

The use of images by any member depicting Department property, equipment, or personnel, if posted on the Internet in any manner that demean the Department's core values or violate policies and procedures, or that may have the potential to disrupt the Department, shall be subject to disciplinary action.
In order to meet the Department's safety, performance, and public-trust needs, the following are prohibited:

A.      Speech or expression made pursuant to an official duty that tends to compromise or damage the mission, function, reputation, or professionalism of the Police Department or its employees.

B.      Speech or expression that, while not made pursuant to an official duty, is significantly linked, or related, to the Police Department and tends to compromise or damage the mission, function, reputation, operations, or professionalism of the Police Department or its employees.

C.     Speech or expression that could reasonably be foreseen as creating a negative impact on the credibility of the employee as a witness. For example, posting statements or  expressions to a website that glorify or endorse dishonesty or illegal behavior.

D.     Speech or expression of any form that could reasonably be foreseen as creating a negative impact on the safety of the employees of the Department. For example, a statement on a blog that provides specific details as to shift change assignments or staffing of special events.

E.     Speech or expression that is contrary to the good order and discipline of the Police Department.

F.     Disclosure, through whatever means, of any information, photograph, video or other recording obtained or accessible as a result of employment with the Department for financial gain, or any disclosure of such materials without the expressed authorization of the Chief or his/her designee (Penal Code § 146g.)

G.     Posting, transmitting, or disseminating any photographs, video or audio recordings, likenesses or images of Department logos, emblems, uniforms badges, patches, marked vehicles, equipment or other material that specifically identifies the Police Department on any personal or social networking or other website or web page, without the express written permission of the Chief of Police.

H.     Failure to take reasonable and prompt action to remove any content that is in violation of this policy and/or posted by others from any web page or website maintained by the employee (e.g., social or personal website).

I.     Accessing websites for non-authorized purposes, or use of any personal communication device, game device or media device, whether personally- or Department-owned, for personal purposes while on-duty, except in the following circumstances:

1.     When brief personal communications may be warranted by the circumstances (e.g., inform family of extended hours).

2.     The use of personally-owned communication devices during authorized breaks; however, such usage should be limited as much as practicable to areas out of sight and sound of the public and shall not be disruptive to the work environment.

J.     Negative comments on the internal operations of the Department, or specific conduct of supervisors or peers that impacts the public perception of the Department is not protected First Amendment speech, in accordance with established case law, and is prohibited. Officers are subject to discipline.

# EXHIBIT K

# SAN DIEGO POLICE DEPARTMENT
# PROCEDURE

| | |
|---|---|
| **DATE:** | OCTOBER 10, 2018 |
| **NUMBER:** | 8.09 – CRITICAL INCIDENTS |
| **SUBJECT:** | MEDIA RELATIONS AT CRITICAL INCIDENTS |
| **RELATED POLICY:** | 8.09 |
| **ORIGINATING UNIT:** | MEDIA SERVICES |
| **NEW PROCEDURE:** | ☐ |
| **PROCEDURAL CHANGE:** | ■ NO CHANGES |
| **SUPERSEDES:** | DP 8.09 – 10/16/2015 |

## I.      PURPOSE

This Department procedure establishes guidelines for the proper disclosure of information to the media at critical incidents.

## II.      SCOPE

This procedure applies to all members of the Department.

## III.      BACKGROUND

Critical incidents are of great interest to the public and news media.  It is necessary, therefore, to establish guidelines for the proper disclosure of information to the media without interrupting the Department's management of a critical incident.

The general parameters for the release and restriction of information to the media are described in Department Procedure 1.30, Press Release and Media Relations.

## IV.    PROCEDURES

A.    Media Relations Responsibility

1.    Upon arriving at a critical incident scene, a Department Public Information Officer will assist in providing information and direction to the media.

2.    The Incident Commander will designate a person (preferably a supervisor) to carry out this liaison function pending arrival of a Public Information Officer.

3.    The Public Information Officer will be notified of any questionable or improper conduct of a media representative.

B.    Call-out Procedures for a Public Information Officer

1.    All requests for call-outs shall be coordinated through the Watch Commander.  A Public Information Officer may be requested to provide liaison with the news media in the following situations:

a.    Any time a Command Post is activated to handle a large incident;

b.    For large-scale SWAT operations;

c.    Upon the death or critical injury of a San Diego police officer;

d.    For any incident other than an officer-involved shooting that results in the death or critical injury of a citizen as a result of police action; and,

e.    For incidents such as newsworthy arrests, lifesaving acts, and crime series information.

2.    Public Information Officers' home telephone and cell phone numbers are available in the Watch Commander's Office.

C.    Duties of a Public Information Officer

Under the direction of the Incident Commander, a Public Information Officer shall:

1.    Receive a general incident briefing from the Incident Commander or his/her designee;

    2.       Designate a media staging/briefing area near the Command Post.  The area should be as close as possible to the Command Post <u>without</u> interfering with operations;

    3.       Identify locations accessible and restricted to media personnel;

    4.       Conduct media briefings, remain available to media personnel, and monitor their activities; and,

    5.       Maintain contact with, and advise, the Watch Commander of media briefing locations, updates, and dictate informal news releases for incoming media calls.

## V.    <u>NEWS MEDIA AT DISASTER AREAS AND CRIME SCENES</u>

A.    The Incident Commander at a disaster or crime scene is responsible for providing appropriate information to authorized news media.

B.    Disaster and accident scenes may be closed to the public pursuant to 409.5 PC; however, news media representatives are exempt from this restriction.

    1.       As soon as a disaster or accident scene has been identified and secured, authorized media shall be permitted free access to the area after being advised of any existing danger (provided the area is not a crime scene.)

    2.       Department members shall not decline to rescue news media personnel in danger, but will not provide an escort into or out of dangerous areas.

    3.       Authorized members of the news media are to be permitted free movement in the area as long as they do not interfere with law enforcement or public safety functions.

    4.       A Public Information Officer will maintain liaison with the news media.

C.    Crime scenes shall be closed to all unauthorized persons, including the news media.

    1.       Crime scenes in areas of public access may be opened for media inspection after the scene is secured and any search for, and preservation and processing of, evidence have been completed.

    2.       Reporters and/or photographers shall be kept far enough from a crime scene being searched or preserved to protect it from being disturbed or evidence from being damaged.

3.     News media representatives have no right of access to private property greater than the general public and are subject to public access restrictions imposed by the owner or person in charge when a crime scene is located on private property.

4.     Once inner and outer perimeters are securely established at a scene, media should be allowed access to the safest locations within the outer perimeter as determined by the Incident Commander.

a.     News media should not be allowed within the inner perimeter. Access to the inner perimeter shall only be authorized by the Incident Commander.

D.     The scene of a Police Department tactical operation (e.g., SWAT) is the same as a crime scene, except that authorized news media shall be permitted within the outer perimeter of the scene and are subject to any restrictions set forth by the Incident Commander.

1.      Once inner and outer perimeters are securely established at a scene, media should be allowed access to the safest locations within the outer perimeter as determined by the Incident Commander.

2.     A Public Information Officer or, in his/her absence, another person designated by the Incident Commander, shall be designated to keep the news media briefed.

3.     Department members shall not jeopardize a tactical mission in order to accommodate the news media, but every effort shall be made to keep reporters well informed of the progress of the operation.

4.     News media should not be allowed within the inner perimeter.  Access to the inner perimeter shall only be authorized by the Incident Commander.

E.     "Authorized News Media" representatives are those persons possessing current, valid media credentials issued by SDPD or any bona fide law enforcement agency, or other suitable identification establishing regular news media affiliation or employment.

F.     "Freelance" reporters or photographers possessing a valid San Diego Police Department media credential will be deemed as authorized news media representatives, or other suitable identification establishing regular news media affiliation or employment.

EXHIBIT L

Print or Type Legibly – Illegible writing is grounds for application denial

# SAN DIEGO POLICE DEPARTMENT

## Media Identification Card Application

| No. _____ |
| Exp. _____ |
| (FOR OFFICE LISE ONLY) |

New_____Renewal_____

Press Pass Number_____

Name_____
(LAST)                                    (FIRST)                                    (MIDDLE INITIAL)

Home Address _____
(STREET ADDRESS)                        (CITY)                        (ZIP CODE)

Date of Birth:_____        Email:_____

Employer:_____        Job Title:_____

Business Address _____
(STREET ADDRESS)                        (CITY)                        (ZIP CODE)

Date Hired_____        Home Ph:_____        Bus. Ph:_____

I understand that possession of a San Diego Police Department Media Identification Card is a privilege granted by the Chief of Police to those who have a regular need to cross police and/or fire lines. The Chief of Police reserves the right to deny or revoke a card, according to the guidelines established in San Diego Police Department Procedure 1.31.

_____
(Applicant's Signature) To be signed upon retrieval of ID

I certify that this individual is employed full time and has a regular need to cross police and/or fire lines. I will be responsible for retrieving the Media Identification Card upon this employee's resignation or termination and for returning it to the Media Relations Office of the San Diego Police Department.

_____        _____
(Supervisor's Printed Name)                Supervisor's Phone number

**Submitting Completed Application:** All applications should be e-mailed to **MediaID@PD.SanDiego.Gov**. When the application has been processed, you will be notified by e-mail. Should additional information be needed by the Media Relations Office, the applicant will be contacted by phone or e-mail. Once the application has been processed and approved, bring the confirmation e-mail and your photo ID to SDPD Headquarters 1401 Broadway St. (8 a.m. to 4 p.m., Monday through Friday) to complete the credentialing process. Do not bring photographs; your photo and signature will be transferred to the media card by computer. The entire process should take no more than ten minutes. There is no cost to you. **If you do not complete the credentialing process within 30 days of approval of this application, you will be required to reapply for the credential.**

Approved: _____
(SDPD AUTHORIZING AGENT)

Revised 1/21

EXHIBIT M

# SAN DIEGO POLICE DEPARTMENT
## Media Identification Card Application
### (Independent)

For applicants who work for more than one news organization as a freelancer.

| No. _____ |
| --- |
| Exp. _____ |
| (FOR OFFICE USE ONLY) |

New_____Renewal_____

Name_____
　　　　　(LAST)　　　　　　　　　　　(FIRST)　　　　　　　　　　(MIDDLE INITIAL)

Home Address _____
　　　　　　　(STREET ADDRESS)　　　　　　　(CITY)　　　　　　(ZIP CODE)

Date of Birth_____　Email Address:_____

Home Phone_____　Business Phone_____

**ASSIGNMENT  AFFILIATIONS  (LIST  MOST  FREQUENT  EMPLOYER FIRST)**

NAME　　　　　FREQ./MO.  CONTACT　　　　PHONE

1. _____

2. _____

3. _____

**4** . _____

GENERAL  JOB  DESCRIPTION _____

I understand that possession of a San Diego Police Department Media Identification Card is a privilege granted by the Chief of Police to those who cover spot news on a regular basis. The Chief of Police reserves the right to deny or revoke a card, according to the guidelines established in San Diego Police Department Procedure 1.31.

_____
(Applicant's Signature)

RETURN APPLICATION TO: Please send the application in PDF form with your name in the subject of the email to: MediaID@pd.sandiego.gov. **If you do not complete the credentialing process within 30 days of approval of this application, you will be required to reapply for the credential.**

Approved: _____
　　　　　　(MEDIA SERVICES PROGRAM MANAGER)

Revised 01/21