D. GILL SPERLEIN (SBN: 172887)
gill@sperleinlaw.com
LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

*Attorneys for Eva Knott*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA KNOTT,<br><br>   Plaintiff,<br><br>  v.<br><br>THE CITY OF SAN DIEGO;<br>POLICE CHIEF DAVID NISLEIT,<br>in his representative capacity as<br>Chief of Police; and LIEUTENANT<br>ADAM SHARKI, in his<br>representative capacity as SDPD<br>Public Information Officer,<br><br>   Defendants. | Case No.: '24CV0855 BAS DDL<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO PROCEED PSEUDONYMOUSLY** |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD.**

 **PLEASE TAKE NOTICE** that on _____ at \_\_\_\_ a.m./p.m. in the United States District Court for the Southern District of California, Plaintiff Eva Knott will, and hereby does, move this Court for an Order allowing her to proceed in this matter using a Pseudonym.

 This motion is made on the grounds that Knott is a journalist who reports under a pseudonym for personal safety issues. As explained in the attached Memorandum of Points and Authorities, pseudonymity is necessary to protect Knott from retaliation, injury, and harassment.

 This motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, the Declarations and Exhibits filed in support of the motion, the records and pleadings on file herein, and on such other evidence as may be presented at the hearing on the motion.

Dated:            by:   D. Gill Sperlein

               *[signature]*
               THE LAW OFFICE OF D. GILL SPERLEIN

               Harmeet K. Dhillon
               DHILLON LAW GROUP INC.

               Attorneys for Attorneys for Plaintiff Eva Knott

# MEMORANDUM OF POINTS AND AUTHORITIES

**RELEVANT FACTS**

Eva Knott is the *nom de plume* of the journalist who brings this action. Declaration of Eva Knott ("Knott Decl.") at ¶3. Knott has reported on crime and the courts in San Diego for fifteen years. *Id*. at ¶2. A significant portion of her reporting covers gang activity. *Id*. at ¶4. In recent years, this has included investigating and writing about Antifa. *Id*. at ¶2.

Knott has faced threats and harassment in the past. Gang members have blatantly photographed and video-recorded Knott, sometimes while seated directly next to her in the courtroom. *Id*. at ¶4. Female gang members have followed her into the women's restroom. *Id.* Once, two peewees (young male gangsters) quickly got into the elevator with her, one on each side, laughing loudly and saying to each other, "Snitches end up in ditches!" *Id.* Once, an agitated young man got very close to her and demanded to know why she wrote a story about him stealing a car. *Id.* In 2009 or 2010, Knott received a handwritten letter sent to her home address from a convicted felon whose trial she had reported on. *Id*. at ¶5. She and her husband found this to be deeply concerning. *Id.* Knott discussed the issue with her editor, and all agreed that for safety reasons she would begin using the pen name by which she has since been known—Eva Knott. *Id.*

One current case Ms. Knott is reporting on, *The People of the State of California v. Brian Lightfoot, Jr. et al.*, San Diego County Superior Court, No. SCD274477, presents a higher-than-normal risk of threats, harassment, and violence directed at Ms. Knott. According to the Grand Jury Indictment in the case, defendants in the case are affiliated with Antifa, a self-identified, left-wing, anti-fascist, and anti-racist political movement in the United States, that uses force, fear, and violence to further their interests and suppress the interests of others. As part of the Grand Jury evidence,

victims described how members of Antifa used social media to identify her by name and then used that information to harass and discredit her to friends, family, and in the workplace.

Because of the high risk of harassment, the State of California moved for protective order regulating release of discovery supported by the Declaration of Will Hopkins, the Deputy District Attorney assigned to this case. Knott Decl. at ¶ 11 & **EX. N**. Mr. Hopkins testified that Antifa members collect documents on persons they have any sort of disagreement with including "police officers, political rivals, elected officials, and even their own members who have fallen out of favor [including but not limited to] license plates, surveillance photos of individuals with their families, civil and criminal documents relating to these targets, San Diego Sheriff's Deputy, federal agents, and San Diego Officers names, badge numbers, duty assignments salary information." *Id*., Hopkins Decl. at ¶¶ 4 & 5. Hopkins went on the explain that members of Antifa use this information to dox their targets, "to harass, attack, and stalk victims in order to socially, psychologically, and physically harm their targets" and that Defendants in this case have used these tactics. *Id*., Hopkins Decl. at ¶¶ 6-12.)

Eva Knott's writing partner Andy Ngo was beaten and severely injured by an Antifa mob in in Portland, Oregon in June 2019 and again in May 2021 while in the course of carrying out his reporting duties in public. Declaration of Andy Ngo (Ngo Decl.) at ¶3. Antifa members have repeatedly showed up at his family's home to look for him. (*Id*.) Members of Antifa have even called for his death. *Id*. at ¶4 & **Exhibit O**.

Because of safety risks involved in reporting on cases as described above, Ms. Knott consistently uses her pen name in all professional situations. Around 2008, Knott applied for her first San Diego Police Department Media Identification Cards using her married name. Knott Decl. at ¶6. When she renewed her press pass subsequent to adopting her pen name, she applied under her pen name with the full knowledge of

SDPD. *Id.* Each time she has renewed her press pass, she has applied using the name Eva Knott. *Id.* Ms. Knott also routinely uses her pen name, when submitting mandatory Judicial Council Forms MC-500 and MC-510 in order to obtain court orders permitting her to record or photograph criminal proceedings in state court. *Id*. at ¶7.

All the above facts demonstrate Knott's need to protect her identity and to proceed in this action using her pseudonym.

**ARGUMENT**

### I. The Court Should Allow Eva Knott to Use Her Pseudonym on Any Papers Filed in Connection with This Matter

Plaintiffs generally must identify themselves in their Complaint pursuant to Fed. R. Civ. P. 10(a). Nonetheless, courts allow pseudonymity when special circumstances justify secrecy. *Doe v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). To receive such permission, a party must affirmatively demonstrate that pseudonymity is "necessary to protect a person from injury or harassment." *United States v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008) *quoting United States v. Doe*, 488 F.3d 1154, 1156 n.1 (9th Cir. 2007).

In weighing a motion for leave to proceed pseudonymously, the district court must balance (1) the plaintiff's need for anonymity; (2) prejudice to the defendant; and (3) the public interest. *Doe v. County of El Dorado*, 2013 U.S. Dist. LEXIS 169883 (E.D. Cal., Dec. 2, 2013)(citing *Advanced Textile*, *supra*).

The Ninth Circuit has identified three situations in which requests for pseudonymity have been granted: (1) when identification creates a risk of retaliatory physical or mental harm[1]; (2) when anonymity is necessary to preserve privacy in a

---

[1] Similarly, California Courts have granted requests for pseudonymity when identification creates a risk of retaliatory physical or mental harm, as exists here. (*Department of Fair Employment,* 82 Cal.App.5th at 112 [substantial risk of harm would be sufficient to allow for anonymity].)

matter of a sensitive and highly personal nature; and (3) when the anonymous parties are compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution. *Advanced Textile*, 214 F.3d at 1068; *see also 4 Exotic Dancers v. Spearmint Rhino*, 2009 U.S. Dist. LEXIS 9841 (C.D. Cal., January 29, 2009).

Ms. Knott should be granted leave to proceed using pseudonyms under the first of these three factors.

**II.  Plaintiff's Need for Anonymity: Safety Concerns Require Eva Knott to Proceed Pseudonymously.**

This case involves the first of the three factors which support the use of a pseudonym—risk of physical or mental harm. The facts set forth above demonstrate a heightened risk of harm to Eva Knott. Knott testifies that she started using a pseudonym professionally because she was contacted at her home address by a convicted felon after reporting on this trial. (Knott Decl. at ¶5.) Moreover, Defendants in a case she is currently covering are alleged to be members of Antifa an organization that has a well-documented history of violence, no central governing body, and no means of controlling individual actors.

Knott has therefore demonstrated a substantial risk of retaliatory physical or mental harm and thus a need to proceed pseudonymously.

**III.  The Use of Pseudonyms Will Not Prejudice the Defendants.**

Permitting the Plaintiff to proceed pseudonymously in this case will not disadvantage any of the Defendants. Plaintiff's identity is known to the Defendants, and they will have full opportunity to take discovery from her (although plaintiff will request a protective order with regard to her identity). Where the name of the person seeking pseudonymity is known to defendants, proceeding pseudonymously does not intrude on the defendants' rights. *See Doe v. George St. Photo & Video, LLC*, No. 16-cv-02698-MEJ, 2016 U.S. Dist. LEXIS 83965, at *5 (N.D. Cal. June 28, 2016)

### IV. The Public Interest Weighs in Favor of Anonymity.

While the public has a common law right to access judicial proceedings, that right is not absolute. "In certain situations, anonymity does not obstruct public scrutiny of the important issues in a case, and the public interest militates in favor of seeing the case decided on the merits." *County of El Dorado*, *supra* at **12-13 (citing *Advanced Textile*, 214 F.3d at 1067). Therefore, the Court must balance Knott's safety concerns, against the public's right to know who is using its courts.

In *County of El Dorado*, *supra*, the court was confronted with a constitutional challenge to a sex offender ordinance. The court granted leave to proceed through the use of pseudonyms when the issues presented by the complaint were constitutional in nature and the plaintiff's identity had no bearing on the resolution of the issues. In so doing, the court determined that the public interest weighed in favor of deciding the case on the merits through the use of pseudonymity.

Here, where Plaintiff writes under the *nom de plume* of Eva Knott, the general public has no interest whatsoever in knowing her legal name. If anything, the public will benefit since her writing is associated with her pen name.

Moreover, because Knott is a journalist, there is an additional interest that the Court should consider in this matter.

> First Amendment protection for anonymous speech was first articulated a half-century ago in the context of political speech, *Talley v. California*, 362 U.S. 60, 64-65 (1960), but as the Supreme Court later observed, the Talley decision harkened back to "a respected tradition of anonymity in the advocacy of political causes." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995). Undoubtedly the most famous pieces of anonymous American political advocacy are The Federalist Papers, penned by James Madison, Alexander Hamilton, and John Jay, but published under the pseudonym "Publius." *Id*. at 344 n.6. Their opponents, the Anti-Federalists, also published anonymously, cloaking their real identities with pseudonyms such as "Brutus, "Centinel," and "The Federal Farmer." *Id*. It is now settled that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content

of a publication, is an aspect of the freedom of speech protected by the First Amendment." *Id*. at 342.

*Anonymous Online Speakers v. United States Dist. Court*, 661 F.3d 1168, 1172-73 (9th Cir. 2011).

When weighing the public interest under the prevailing jurisprudence, courts generally do not address the moving party's right to speak anonymously. However, where the moving party is a journalist writing under a pen name, the Court should consider that masking Plaintiff's true identify allows her to continue reporting on criminal activity without fear that she might be the subject of intimidation or violence. This not only benefits her, but also the public that reads her reporting.

Accordingly, there is no public interest that will be diminished if Knott is allowed to proceed using her *nom de plume*; rather there is a public benefit.

**CONCLUSION**

For the reasons set forth above, the Court should allow Plaintiff to proceed in this action under her pseudonym Eva Knott.

Respectfully submitted,

Dated: May 15, 2024             by:

_____
D. Gill Sperlein
THE LAW OFFICE OF D. GILL SPERLEIN

Harmeet K. Dhillon
DHILLON LAW GROUP INC.

Attorneys for Attorneys for Plaintiff Eva Knott